ARKANSAS POWER & LIGHT COMPANY *v.* DUTTON.

4-5962                                    140 S. W. 2d 689

Opinion delivered May 27, 1940.

*House, Moses & Holmes, T. J. Gentry, Jr.,* and *Eugene R. Warren,* for appellant.

*W. R. Donham,* for appellee.

SMITH, J. Appellee recovered a judgment—not complained of as being excessive—to compensate an injury sustained in the course of his employment by appellant.

The case is unusually free from the conflicts in the testimony usually found in such cases; but, viewed in the light most favorable to appellee, it may be stated as follows: He and eight other employees of appellant were engaged in constructing an electric power line. Poles were erected on which the power lines were strung. Appellee was thus employed at the time of his injury to compensate which this suit was brought.

Holes from 3 to 5 feet deep were dug in which to place the poles. The poles were from 25 to 35 feet in length, and were 9 to 10 inches in diameter at the big end and from 5 to 6 inches at the small end. The employees began placing one of these poles into the hole which had been dug for its reception. The practice was to raise the small end of the pole about 12 feet, when a "jenny" would be placed under it. The jenny consisted of two pieces of lumber, which crossed and which were bolted together about 18 inches from the ends of said pieces. This made a fork into which the pole could be placed. The jenny was about 7 feet high when placed under the pole.

The pole, the falling of which injured appellee, had been lifted so that the jenny might be placed under it. The butt end of the pole was in the hole. When this had been done, appellee and three other employees took pikes provided for that purpose, and placed them under the pole to raise it into an upright position, so that it would fall into the hole. The pikes had metal spikes on their ends, and were about 12 or 15 feet long. The foreman under whose direction the crew of men were working was at the large end of the pole, and it was his duty to assist in holding the pole steady so as to keep it from turning as it was being lifted. A cant hook was ordinarily used for this purpose, and one of the controverted questions of fact in the case is whether the foreman had then and there a cant hook and, if so, whether he employed it for the use intended as the pole was being raised into its final position. The testimony on the part of appellee was to the effect that the foreman was making no use of the cant hook as he was supposed to do, and that he merely placed his foot on the butt end of the pole with no other means of holding it steady. The failure to use a cant hook is one of the grounds of negligence alleged as constituting appellee's cause of action.

The pole had been lifted to the height where the jenny could be placed under it. Appellee and three other employees placed their pikes under the pole to raise it

still higher. As this was done, a larger and stronger employee took appellee's pike, and the men began lifting. As they did so appellee started to a truck in which was carried the tools used by the men. One of these tools was another pike, and appellee went to get it to assist other employees in lifting the pole. Appellee was not ordered to do this, but he did so in the line of his duty. He had not departed from his employment by doing an act not specifically directed. It is not expected or required that the foreman shall direct each specific act of the employee, who is allowed to use his initiative and intelligence, provided he does not depart from his employment. It was no departure from appellee's employment to get another pike even though he had not been ordered to do so. It was the duty of the employees to place the pole in position, and the pikes were provided for that purpose. Certainly, appellee was not a volunteer in going for an instrument provided for the use he intended to make of it.

The testimony is to the effect that one of the employees manipulated the jenny, and that it was the duty of this employee to move the jenny toward the butt end of the pole as it was lifted higher and higher, thus enabling the men with the pikes to take new hand holds and preventing the pole from turning or falling as they did so. There was testimony to the effect that the man in charge of the jenny did not move it forward as he was supposed to do. This failure constitutes the second ground of negligence alleged in the complaint.

The testimony was to the further effect that the men were supposed to coordinate their efforts in lifting the pole, and were supposed to lift simultaneously and evenly and upon command given by one of the men; and there was also testimony to the effect that the pole would not have fallen if this had been done. This failure was assigned as a third ground of negligence in the complaint.

These questions were submitted to the jury under instructions of which no complaint is made; and we think the testimony briefly summarized as it is, suffi-

ciently supports the finding of negligence upon some one or all of these allegations.

It is insisted that appellee was guilty of contributory negligence, and had assumed the risk of his injury, and that the trial court should have so declared as a matter of law. The insistence is that appellee could have gone for the pike without walking under the pole, and that it was negligence for him to do so, and that he assumed the risk of his injury.

No complaint is made of instructions under which these issues were submitted to the jury, and we think they were questions of fact which should have been submitted to the jury. The jury may have found—and the testimony is sufficient to support the finding—that when appellee surrendered his pike to the larger and stronger man, the pole was lying safely in the jenny and that no attempt would be made to raise the pole higher until a signal to that effect was given, and that there was no danger of the pole falling until that danger arose through the negligent manner in which the pole was raised. There was also testimony to the effect that the pole was being erected on the bank of a drainage canal, and that appellee went to the truck for the pike in the only practical manner. However, under all the testimony we think the question of contributory negligence, and that of assumption of risk, were questions for the jury.

No error appears, and the judgment must be affirmed, and it is so ordered.

GRIFFIN SMITH, CJ., not participating.